

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-26-2003

# Markle v. Comm Social Security

Precedential or Non-Precedential: Precedential

Docket 02-3128

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Markle v. Comm Social Security" (2003). *2003 Decisions.* Paper 676.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/676

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed March 26, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3128

WILLIAM R. MARKLE

Appellant

v.

JOANNE A. BARNHART,
COMMISSIONER OF SOCIAL SECURITY

On Appeal from the United States District Court
for the Western District of Pennsylvania

District Court Judge: The Honorable Donetta W. Ambrose
(D.C. Civ. No. 01-1693)

Argued January 28, 2003

Before: SLOVITER and RENDELL, Circuit Judges, and
DEBEVOISE,* Senior District Court Judge

(Opinion Filed: March 26, 2003)

Thomas D. Sutton (Argued)
Leventhal & Sutton
One Oxford Valley
 Suite 317
Langhorne, PA 19047
 Attorney for Appellant

---

* Dickinson R. Debevoise, Senior United States District Judge for the
District of New Jersey, sitting by designation.

James A. Winn
Regional Chief Counsel, Region III
Rafael Melendez (Argued)
Assistant Regional Counsel
Office of the General Counsel
Social Security Administration
P.O. Box 41777
Philadelphia, PA 19101

Mary Beth Buchanan
United States Attorney
Paul E. Skirtich
Assistant U.S. Attorney
Western District of Pennsylvania
633 U.S. Post Office & Courthouse
Pittsburgh, PA 15219
    Attorneys for Appellee

---

## OPINION OF THE COURT

---

DEBEVOISE, Senior District Court Judge:

Appellant, William R. Markle, appeals from an order of the District Court affirming the decision of the Administrative Law Judge ("ALJ") holding that Markle is not disabled and entitled to Supplemental Security Income ("SSI") and granting the Commissioner's motion for summary judgment. We conclude that the Administrative Law Judge (ALJ) erred when he failed to find that Markle had a full scale IQ score of 70. We will reverse and remand, directing the ALJ to complete Step 3 of the evaluation process by developing the record and determining whether Markle's mental retardation had an onset date before age 22, in which event he would be entitled to the benefits he seeks.

## I. *Background*

Markle is a 48 year old man. He attended special education classes in school, completing the ninth grade but dropping out after two months in tenth grade. He obtained a GED in the 1970s, can read, write, add, subtract, but has

difficulty with multiplication and division. In the remote past he performed some work painting and wallpapering houses and cutting grass, but performed no work during the fifteen years prior to his SSI application. At the time of the administrative hearing he lived alone and independently. He goes out when necessary, shops, walks around and visits friends and relatives. He takes care of his apartment and handles all his bills and uses an ATM to access his bank account.

On February 14, 2001, after the determination of the Pennsylvania Bureau of Disability Determination but before the ALJ hearing, Markle underwent a consultative psychological evaluation by James E. Williams, Ph.D., a licensed psychologist. Dr. Williams noted that there was nothing unusual about Markle's gait, posture, manner or hygiene and that his general appearance was appropriate. Markle appeared relaxed and personable throughout the evaluative process and exhibited no evidence indicative of anxiety or psychopathology. Of particular significance in the present case is the fact that Markle's IQ test revealed a verbal IQ score of 73, a performance IQ score of 72 and a full scale IQ score of 70.

With respect to Markle's ability to make occupational adjustments, Dr. Williams found that despite being cognitively challenged, he had a good ability to use judgment, function independently, follow work rules, relate to co-workers, deal with the public, and interact with supervisors, and had a fair ability to deal with work stresses and maintain attention and concentration. Markle had a fair ability to understand, remember and carry out complex and detailed job instructions. Further, Dr. Williams found that Markle had a very good to unlimited ability to make personal-social adjustments such as demonstrating reliability, maintaining personal appearance, relating predictably in social situations, and behaving in an emotionally stable manner.

Markle protectively filed an application for SSI disability benefits. The Pennsylvania Bureau of Disability Determination denied his claim initially. Following a timely request, a hearing was held before an ALJ, who denied the claim. The Appeals Council denied Markle's request for

review of the ALJ's decision. Markle filed suit in the District Court which granted the Commissioner's motion for summary judgment. This appeal followed.

## II.  *The ALJ and District Court Determinations*

The ALJ received medical evidence, including Dr. Williams's report, heard Markle's testimony and received the testimony of a vocational expert. Proceeding through the five-step evaluation process the ALJ found that Markle had not worked since filing his application and consequently had not been engaging in substantial gainful activity (Step 1). He stated that "[c]linical and objective findings establish chronic obstructive pulmonary disease, hypertension, obesity, gout and diminished intelligence. These impairments are not slight and result in more than a minimal effect on the claimant's residual functional capacity. Consequently, the Administrative Law Judge finds claimant's impairments severe as set forth in Social Security Ruling 96-3p." (App. at p. 13) (Step 2)

Step 3 of the sequential evaluation process required that the ALJ determine whether any of Markle's impairments, alone or in combination, met or equaled a listed impairment as set forth in Appendix 1, Subpart P, Regulations No. 4. Of importance in the present appeal is the ALJ's determination that Markle did not satisfy the impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05, in particular the impairment listed at § 12.05C. The pertinent provision reads:

> Mental Retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A,B,C, or D are satisfied.

> *       *       *

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment

imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

The ALJ noted Markle's IQ scores, which met the IQ criteria of § 12.05C, but found that "the results of such testing procedures cannot be taken at face value in view of the fact that they are inconsistent with the claimant's ability to independently perform self-care needs, perform various activities of daily living, and so forth. Of further significance is the fact that despite a limited special education, the claimant obtained a general equivalency diploma." (App. at p. 14). The ALJ referred to the various positive observations contained in Dr. Williams's report and to Markle's own description of the manner in which he was able to perform successfully the daily functions of his life. He found "that the claimant's impairments do not meet or equal the severity of Listings 1.00, 3.00, 12.05 or any other listing. . ." (*Id.*). He further stated that "[i]n reaching this conclusion, the Administrative Law Judge has considered the opinion of the State agency medical consultant who evaluated this issue, and reached the same conclusion." (*Id.*)

Moving to Step 4 the ALJ reviewed in great detail Markle's testimony and the extensive medical evidence in the record reflecting Markle's various impairments. He stated that "[b]ased on the clinical and objective findings of treating and consulting physicians, and the claimant's range of activities, the Administrative Law Judge believes that the claimant has exaggerated his complaints of debilitating pain, shortness of breath, and limitations. The totality of the evidence, especially the objective and clinical findings of treating and consulting physicians, rebuts the claimant's contention that he is totally disabled from all forms of gainful employment." (App. at p. 17). The ALJ found that Markle has the residual functional capacity to perform a wide range of simple, routine and repetitive light work activity not involving exposure to temperature extremes, and excessive wetness, humidity, dust, fumes, gases and stress. He noted that light work entails lifting no more than twenty pounds at a time with frequent lifting

and carrying objects weighing up to ten pounds, standing and walking.

The ALJ observed that Markle had no past relevant work experience and proceeded to deal with the Commissioner's burden at step 5 to show that there are jobs existing in significant numbers in the national economy which Markle can perform, consistent with his medically determinable impairments, functional limitations, age and education. In response to the ALJ's hypothetical question the vocational expert testified that a person having the hypothesized conditions could perform such light jobs as an inserter, bagger, weigher and guard, and that a significant number of these jobs existed in the region of Markle's residence, in the State of Pennsylvania and in the national economy. The ALJ made the following findings relevant to his step 5 evaluation:

> Based on an exertional capacity for light work, and the claimant's age, education, and work experience, Section 416.969 of Regulations No. 16, and Vocational Rule 202.20, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled." Although the claimant's additional nonexertional limitations do not allow him to perform the full range of light work, using the above cited rule as a framework for decision making, there are a significant number of jobs in the national economy which he could perform. Examples of such jobs are: inserter, bagger, weigher, guard, cutter/trimmer, assembler, addresser, and packager. These jobs exist in significant numbers in the immediate area of the claimant's residence as well as in the national economy.

> The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(f)).

(App. at p. 20)

Had the ALJ found that Markle's impairments met the severity listing under § 12.05C, the Step 4 and Step 5 inquiry would have been unnecessary and irrelevant.

In his appeal to the District Court Markle challenged the ALJ's conclusions that he does not meet a listed impairment, in particular the impairment listed at § 12.05C, and that Markle is capable of performing light work.

Addressing the listed impairment issue the District Court noted the verbal IQ of 73, the performance IQ of 72 and the full scale IQ of 70, holding, correctly, that "where verbal, performance, and full scale IQs are provided, the Secretary must consider the lowest of these scores in conjunction with listing 12.05", and that "Markle would ordinarily satisfy the IQ guidelines for both § 12.05C and § 12.05D, given that he has a full scale IQ of 70" (Joint App. at p.10). Citing *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998) and *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986), the District Court held, again correctly, that the Commissioner is not required to accept a claimant's IQ scores and may reject scores that are inconsistent with the record. The District Court concluded that the ALJ's rejection of the IQ scores was supported by substantial evidence, including Markle's ability to pay his own bills, add and subtract, use an ATM machine and to take care of all his own personal needs; Markle's ability to identify and administer his medication; his previous jobs; his obtaining a GED; and the positive evaluations of Dr. Williams, the psychologist. Finding that substantial evidence supported the ALJ's conclusion that Markle's IQ scores do not accurately reflect his mental ability and that he does not suffer from mental retardation as that term is used in § 12.05, the District Court did not address Markle's arguments that he also satisfied the other criteria of § 12.05C.

Turning to Markle's challenge to the ALJ's finding that he can perform light duty work, the District Court addressed Markle's contention that his treating physician's, Dr. Jabbour's, conclusion that Markle could sit for less than six hours in an eight-hour work day and could only occasionally lift and/or carry ten pounds, was inconsistent with the definition of light work. The District Court found that substantial evidence supported the ALJ's conclusion that Dr. Jabbour's limitations were not supported by

objective medical evidence, citing Dr. Jabbour's own detailed medical findings, reports of other physical examinations and the residual functional capacity assessment completed by the Pennsylvania agency physician. The District Court rejected Markle's argument that the hypothetical question that the ALJ posed to the vocational expert did not incorporate his mental impairment.

In a footnote (Joint App. at p.12) the District Court rejected Markle's argument that the ALJ erred in not completing a psychiatric review technique form, stating:

> Markle makes a brief argument that the ALJ was required to complete a psychiatric review technique form and that he erred in not completing one. Because such a form was completed at the initial stages of Markle's claim, the ALJ did not need to complete another one. Rather, he only had to incorporate pertinent findings and conclusions based on the previously completed form. *See* 20 C.F.R. Section 416.920a(e). He did so.

Markle raises two issues in his challenge to the District Court's decision affirming the decision of the ALJ, denying Markle's motion for summary judgment and granting the Commissioner's motion for summary judgment. First, he asserts that the District Court erred in failing to find that the ALJ committed an error of law by finding that Markle's mental retardation did not meet the requirements of § 12.05C of the listed impairments, and second, he asserts the District Court erred in failing to find that the ALJ did not incorporate in his decision the Psychiatric Review Technique findings required by the regulations.

### III. *Jurisdiction and Standard of Review*

The District Court had jurisdiction under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c). We have appellate jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291.

The standard of review both in the District Court and in this Court with respect to findings of fact by the

Commissioner is whether there is substantial evidence to support such findings. 42 U.S.C. § 405(g). With respect to the application of legal precepts, the standard of review in the District Court and in this Court is plenary.

## IV. *Discussion*

To meet the requirements of § 12.05C a claimant must i) have a valid verbal, performance or full scale IQ of 60 through 70, ii) have a physical or other mental impairment imposing additional and significant work-related limitations of function, and iii) show that the mental retardation was initially manifested during the developmental period (before age 22). We conclude that the ALJ's ruling that Markle had a full scale IQ of greater than 70 was not supported by substantial evidence.

The District Court observed correctly, that an ALJ may reject scores that are inconsistent with the record. However, the record in the present case does not provide a basis for the rejection. Obviously Dr. Williams concluded that the scores he reported were valid, as he did not qualify them or find that they were inconsistent with the various positive aspects he noted in Markle's appearance, demeanor and conduct. The ALJ's reliance on the opinion of the State medical agency consultant was misplaced, because the consultant did not have available to him Dr. Williams's report and Markle's IQ scores. There was no expert opinion of a psychologist or medical person to contradict Dr. Williams's IQ findings. "An ALJ cannot reject IQ scores based on personal observations of the claimant and speculative inferences drawn from the record." *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000).

The various activities in which Markle is able to engage are not inconsistent with qualifying mental retardation. In a similar case the Sixth Circuit Court of Appeals rejected the Commissioner's argument that a claimant's full scale IQ of 68 was inconsistent with, among other things, his driver's license and work history as a truck driver, limited literacy and sixth grade education, and ability to make change, do laundry and clean his room. *Brown v. Sec'y of HHS*, 948 F. 2d 268, 270 (6th Cir. 1991); *see also, Hodges v. Barnhart*, 276 F.3d 1265 (11th Cir. 2001).

The cases upon which the District Court relied are readily distinguishable from the circumstances of the present case. In *Clark v. Apfel, supra*, the Eighth Circuit Court of Appeals held that the ALJ properly rejected the validity of the claimant's performance IQ of 66 and full scale IQ of 67 where she had worked in the private sector, had a driver's license and was the primary caretaker of her young daughter and had completed ninth grade without special education services. In *Popp v. Heckler, supra*, the Eleventh Circuit Court of Appeals held that the ALJ did not have to accept scores in the listing range for a claimant who had a two-year college degree, was enrolled in a third year of college, and had a history of several skilled jobs including teaching algebra at a private school. By contrast, here, the record evidence did not necessarily undermine the validity of Markle's reported IQ scores.

The ALJ found that "[t]he medical evidence establishes that the claimant has severe chronic obstructive pulmonary disease, hypertension, obesity, gout, and diminished intelligence," and that these severe impairments restrict him to a limited range of light work. These findings establish the second criterion for entitlement under § 12.05C, a physical or other mental impairment imposing additional and significant work-related limitations of function.

Several courts of appeals have held that a finding of a severe impairment establishes the second prong of § 12.05C, e.g., *Luckey v. U.S. Dept. of HHS*, 890 F.2d 666, 669 (4th Cir. 1989); *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987). In *Williams v. Sullivan*, 970 F.2d 1178, 1186-89 (3rd Cir. 1992), we alluded to the requirement of "a physical or other mental impairment imposing additional and significant work-related limitation of functions", but it was unnecessary to frame a definition because we had decided that the claimant's evidence was insufficient to show that he was mentally retarded prior to age 22. However, more recently the Commissioner in new regulations on the evaluation of mental disorders addressed the second prong of § 12.05C, stating that "[w]e always have intended the phrase to mean that the other impairment is a "severe" impairment as defined in

§§ 404.1520(c) and 416.920(c)." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50772 (August 21, 2000). Even absent the Commissioner's clarifying regulation, the severity of Markle's other impairments (obstructive pulmonary disease, hypertension, obesity and gout) which limit him to some forms of light work constitute impairments "imposing additional and significant work-related limitations of function."

Because the ALJ did not find that Markle had a sufficiently low IQ to qualify for a § 12.05C listed impairment, he did not inquire into the third requirement for such an impairment, namely, whether Markle's mental retardation was initially manifested during his developmental period.

In recent years several courts of appeals have applied a rebuttable presumption that a current mental impairment existed before age 22, and Markle asks us to apply that standard. *See e.g., Hodges v. Barnhart, supra.* In *Williams v. Sullivan,* 970 F.2d 1178 (3d Cir. 1992) our court did not apply a presumption, but held that the claimant had a burden of establishing that his mental retardation commenced during the developmental period, and, in that case, had failed to meet that burden. Although a different result might be suggested by the subsequently enacted August 21, 2000 Revised Medical Criteria (quoted below) which were in effect when cases applying the presumption were decided, we are not at liberty to hold that such a presumption exists.[1] We note, however, that *Williams* is readily distinguishable from the present case because there was evidence in *Williams* supporting a finding that the retardation was of recent origin.[2] Here, the evidence before

---

1. *See* Third Circuit IOP 9.1 (setting forth the policy that holdings in published opinions are binding on subsequent panels, and that court en banc consideration is required to overrule them).

2. A major factor suggesting that Williams's mental retardation was of more recent origin was his work history: "Williams's mental retardation is further put into doubt by the fact that Williams did, in fact, maintain a job for most of his adult life." *Id.* at 1185. The Court noted the ALJ's observation that " '[i]t may well be that the claimant has suffered a decrease in his intellectual ability recently due to his marked reduction in activity.' " *Id.*

the ALJ is consistent with a finding that Markle's mental condition remained constant from childhood through the present, the only change being that his physical condition worsened as the years went by. There is no evidence of a long work history — as there was in *Williams* — or of a traumatic event that might have induced mental retardation at a later stage of life.

In its August 21, 2000 Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury the Commissioner's comments included the statement that "We did not intend the second paragraph of proposed listing 12.05 to require intelligence testing (or other contemporary evidence prior to age 18 [now age 22]." The comment proceeded to state:

> The proposed listing, as in the prior rules, stated that the significantly subaverage general intellectual functioning with deficits in adaptive behavior must have been initially "manifested" during the developmental period. We have always interpreted this word to include the common clinical practice of inferring a diagnosis of mental retardation when the longitudinal history and evidence of current functioning demonstrate that the impairment existed before the end of the developmental period. Nevertheless, we also can see that the rule was ambiguous. Therefore, we expand the phrase setting out the age limit to read: "i.e., the evidence demonstrates or supports onset of the impairment before age 22."

*Id.*

Given *Williams*, it is clear that the record should contain some evidence that supports the finding that onset preceded age 22. Here there is evidence that is at least consistent with, and, depending on one's interpretation, could be said to support early onset. There is nothing in Dr. Williams's report to suggest that retardation originated after age 21. In school Markle took special education courses through ninth grade, dropping out after two months in the tenth grade. He "struggled" to obtain a GED in the 1970s. He has not held a job for at least fifteen years, and his work

before that was limited to some painting and wallpapering of houses and cutting grass.

However, the ALJ never addressed this issue, because the injury concluded with a denial of benefits based on the first prong. In such a situation, in light of the Supreme Court's recent ruling in *INS v. Ventura*, 123 S.Ct. 353, 355 (2002), it is incumbent upon us to remand to the agency for it to address the issue in the first instance. In *Ventura*, the Court noted both the agency's expertise and first-hand knowledge of the record, as well as its ability to expand the record if needed, as the bases for requiring remand. We note that here the ALJ may well believe on remand that he should develop the record further — as is his duty — and inquire further into the nature of Markle's special education, or obtain an expert opinion as to the likely onset of the retardation. Accordingly, we will remand the matter to the ALJ so that he can provide his interpretation of the record on this issue, develop the record further, and make a finding whether Markle meets the third element of a § 12.05(C) listed impairment, namely, whether his retardation commenced before age 22.

Because the case will be remanded for further proceedings it is unnecessary to address Markle's contention that the ALJ did not incorporate in his decision the Psychiatric Review Technique findings required by the regulations. Such deficiency, if it exists, can be remedied in a future decision.

## V.  *Conclusion*

We have concluded that the ALJ's finding that Markle did not possess a full scale IQ of 70 was not supported by substantial evidence. The case will be remanded for further proceedings in accordance with the foregoing opinion.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*