Una A. HIPKINS, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security Defendant.

No. Civ.A. 02–155–KAJ.

United States District Court,
D. Delaware.

Feb. 18, 2004.

Gary C. Linarducci, New Castle Corporate Commons, New Castle, Delaware, for plaintiff.

Colm F. Connolly, United States Attorney, District of Delaware; Douglas E. McCann, Assistant United States Attorney, District of Delaware; Wilmington, Delaware, for defendant.

## MEMORANDUM OPINION

JORDAN, District Judge.

## I. INTRODUCTION

Before the Court is plaintiff Una A. Hipkins' ("Hipkins") motion for summary judgment (Docket Item ["D.I."] 8) and defendant Jo Anne B. Barnhart's, Commissioner of Social Security ("Commissioner"), cross motion for summary judgment (D.I. 11). Hipkins brings this action under 42 U.S.C. § 405(g), seeking review of the Commissioner's decision denying her disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434. The court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g) of the Act.

For the reasons that follow, I will deny Hipkins' motion (D.I. 8) and grant the Commissioner's motion (D.I. 11).

## II. BACKGROUND

### A. *Procedural History*

On July 9, 1998, Hipkins filed for disability insurance benefits with the Social Security Administration ("SSA"), alleging an inability to work as of December 15, 1997. (D.I. 9 at 4.) The SSA denied Hipkins' claims initially and upon reconsideration. (*Id.*) On May 25, 1999, at Hipkins' request, a hearing was held before an Administrative Law Judge ("ALJ"). (D.I. 4 at 13.) At the hearing, a vocational expert and Hipkins, represented by counsel, testified. (*Id.*) On July 8, 1998, the ALJ determined that Hipkins was able to perform her past relevant work as a purchasing agent and thus was not disabled under the Act and its regulations. (D.I. 12 at 1.)

Hipkins then filed a request for review with the SSA's Appeals Council. (*Id.*) The Appeals Council found that there was "no basis under the [ ] regulations for granting" Hipkins' "request for review." (D.I. 4 at 5.) The July 8, 1998 decision of the ALJ, therefore, became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955, 404.981, 422.210; *see also Sims v. Apfel,* 530 U.S. 103, 106–107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000); *Matthews v. Apfel,* 239 F.3d 589, 592 (3d Cir.2001). Hipkins now seeks review by this Court under 42 U.S.C. § 405(g). (D.I. 12 at 1.)

### B. *Facts*

Hipkins has a high school education. (D.I. 9 at 5) She has past work experience as a purchasing agent of electronics, and a coffee server and cashier in a restaurant. (D.I. 12 at 4.) Hipkins alleges an inability

to work as of December 15, 1997, due to lumbar degenerative disk disease, fibromyalgia and associated pain. (D.I. 4 at 82.) She attributes her alleged disability to an automobile accident in April 1979. (*Id.* at 15, 86.)

### 1. *Medical Evidence*

On February 22, 1998, Hipkins reported to the emergency room at Christiana Hospital due to pain in her low back, abdomen and legs. (D.I. 4 at 200–215.) An x-ray of her lumbar spine revealed degenerative joint disease at the L3–4 and L5–S1 levels. (*Id.*) Hipkins was diagnosed with "acute back pain." (*Id.*)

On February 27, 1998 Hipkins underwent a CT scan of her lumbar spine. (*Id.* at 169.) The CT scan revealed "congenital canal stenosis" with "mild bulging at L3–4" and "moderate bulging ... at L4–5." (*Id.*) Dr. Garth Koniver concluded that Hipkins suffered from arthritis in her back and directed her to follow up with her treating physician. (*Id.*)

On April 15, 1998, Hipkins sought treatment from Dr. Bruce Rudin. (*Id.* at 134.) Dr. Rudin performed an orthopaedic evaluation and reported that Hipkins complained of low back pain with no radiating leg pain. (*Id.*) Dr. Rudin found that Hipkins had no muscle tenderness or spasm, her lower extremity motor strength was 5/5,[1] and her sensory examination was intact. (*Id.*) His final determination was that Hipkins suffered from degenerative disc disease. (*Id.*) Dr. Rudin prescribed the medication Voltaren, an anti-inflammatory, and physical therapy. (*Id.*)

On July 1, 1998, Dr. Rudin again examined Hipkins. (*Id.*) Dr. Rudin learned that Hipkins never followed up with the physical therapy he prescribed. (*Id.*) He renewed her prescription for Voltaren and noted that "[t]here is little else [he] can do for her of a surgical nature." (*Id.*)

On July 7, 1998, Hipkins reported for physical therapy at Schweizer's Therapy and Rehabilitation. (*Id.* at 137.) The physical therapist, Kim Lewis, reported tenderness throughout Hipkins' spine and hips. (*Id.* at 142.) She recommended that Hipkins undergo hydrotherapy. (*Id.* at 139.) Hipkins attended two physical therapy sessions, on July 13, 1998 and July 16, 1998, and never returned for additional therapy. (D.I. 12 at 7.)

On August 4, 1998, a medical consultant[2] from the Delaware Disability Determination Service ("DDDS") reviewed the evidence in Hipkins' case file. (D.I. 4 at 144–151.) The consultant determined that Hipkins had a residual functional capacity for medium work. (*Id.*)

On September 11, 1998, Dr. Gilbert Norwood, of the SSA's Office of Disability, reviewed the record evidence and the DDDS consultant's assessments. (*Id.* at 154.) Dr. Norwood agreed with the DDDS consultant's findings, including Hipkins' capacity for medium work. (*Id.*) Dr. Norwood added that Hipkins "obviously has almost no objective support for her complaints" and is no worse than indicated by the DDDS consultant's assessments. (*Id.* at 156.)

Dr. Rudin treated Hipkins again on September 30, 1998. (*Id.* at 199.) He opined that Hipkins' symptoms were consistent

---

[1]. Motor strength is scaled as follows: 0/5 (no movement); 1/5 (trace movement); 2/5 (movement with the aid of gravity); 3/5 (movement against gravity but not resistance); 4/5 (movement against resistance supplied by the examiner); 5/5 (normal strength). *The*

*Merck Manual of Diagnosis and Therapy,* § 14, at 1347 (17th ed.1999).

[2]. The consultant's name is not discernable from the record. (D.I. 4 at 151.)

with fibromyalgia or a like disorder and referred her to see Dr. Barry Bakst. (*Id.*) Dr. Rudin further noted that Hipkins "has no treatable pathology in her spine that [he could] help her with." (*Id.*)

On October 30, 1998, Dr. Hal Kramer examined Hipkins and noted that she had lumbar disc problems, symptoms of fibromyalgia, generalized anxiety disorder, and reactive mood disorder. (D.I. 9 at 11.) Dr. Kramer further noted an increase in Hipkins' fatigue. (*Id.*)

A second DDDS medical consultant [3] reviewed the evidence in Hipkins' case file on November 9, 1998. (D.I. 4 at 157–165.) The consultant determined that Hipkins had a residual functional capacity for medium work. (*Id.*)

During the first few months of 1999, Hipkins was treated by Dr. Kramer for influenza and a bronchitic cough. (D.I. 12 at 11.) An x-ray of her sinuses appeared to be normal. (*Id.*)

On May 28, 1999, Dr. Kramer diagnosed Hipkins with chronic lower back pain. (D.I. 9 at 12.) He injected each side of Hipkins' lower back with Marcaine, a local anaesthetic. (*Id.*) Dr. Kramer also referred Hipkins to Dr. Bakst for an evaluation. (*Id.*)

On June 9, 1999, Dr. Bakst completed a Fibromyalgia Residual Functional Capacity Assessment Form. (D.I. 4 at 130–133.) In this assessment, Dr. Bakst indicated that he examined Hipkins on two occasions, October 14, 1998 and June 6, 1999. (*Id.*) Dr. Bakst diagnosed Hipkins with degenerative disc disease and fibromyalgia. (*Id.*) Dr. Bakst further determined that Hipkins had multiple tender points, non-restorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, irritable bowel syndrome, severe headaches, anxiety, panic attacks,

and depression. (*Id.*) Dr. Bakst opined that, as a result of Hipkins' impairments, she would be able to sit for two hours in an eight hour workday, walk or stand for two hours in an eight hour workday, and occasionally lift less than ten pounds. (*Id.*)

## C. *The ALJ's Decision*

To determine whether a claimant is entitled to disability benefits, an ALJ applies a "sequential five-step inquiry pursuant to 20 C.F.R. § 404.1520[ ]". *Morales v. Apfel,* 225 F.3d 310, 316 (3d Cir.2000); *see* 20 C.F.R. § 404.1520; *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir.1986). Under that inquiry:

> [T]he [ALJ] determines first whether an individual is currently engaged in substantial gainful activity. If that individual is engaged in substantial gainful activity, [she] will be found not disabled regardless of the medical findings. If an individual is found not to be engaged in substantial gainful activity, the [ALJ] will determine whether the medical evidence indicates that the claimant suffers from a severe impairment. If the [ALJ] determines that the claimant suffers from a severe impairment, the [ALJ] will next determine whether the impairment meets or equals the list of impairments in Appendix I of sub-part P of Regulations No. 4 of the Code of Regulations. If the individual meets or equals the list of impairments, the claimant will be found disabled. If [she] does not, the [ALJ] must determine if the individual is capable of performing [her] past relevant work considering [her] severe impairment. If the [ALJ] determines that the individual is not capable of performing [her] past relevant work, then [the ALJ] must determine whether, considering the claimant's age, edu-

---

**3.** The consultant's name is not discernable    from the record. (D.I. 4 at 165.)

cation, past work experience and residual functional capacity, [she] is capable of performing other work which exists in the national economy.

*Brewster,* 786 F.2d at 583–584 (internal citations omitted); *see Plummer v. Apfel,* 186 F.3d 422, 428–429 (3d Cir.1999).

In this case, after applying the five-step evaluation, the ALJ determined that Hipkins was not disabled within the meaning of the Act and its regulations. (D.I. 4 at 21.) The ALJ first found that Hipkins was not engaged in substantial gainful activity. (*Id.* at 14.) Next, the ALJ concluded that Hipkins suffered from "degenerative disc disease of the lumbar spine and fibromyalgia, impairments which are 'severe'[.]". (*Id.*) However, her impairments were not impairments listed in Appendix I of subpart P of Regulations No. 4 of the Code of Regulations. (*Id.*) The ALJ then determined that Hipkins had "a residual functional capacity to perform work at the sedentary exertional level." (*Id.* at 20.) Given Hipkins' residual functional capacity for sedentary work, the ALJ concluded that she retained the capacity to perform the functional demands of her previous work as a purchasing agent. (*Id.*) Therefore, the ALJ found Hipkins not disabled under the Act and its regulations. (*Id.*)

## III. STANDARD OF REVIEW

■ A court applies plenary review to the Commissioner's application of law. *Markle v. Barnhart,* 324 F.3d 182, 187 (3d Cir.2003). The Commissioner's findings of fact, however, are reviewed to determine "whether there is substantial evidence to support such findings." *Id.* A Court is required to review the entire record when making those determinations. *Reefer v. Barnhart,* 326 F.3d 376, 379 (3d Cir.2003).

■ Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938.)) If the Commissioner's decision is supported by substantial evidence, then a court is bound by those factual findings. *Plummer,* 186 F.3d at 427.

## IV. DISCUSSION

Hipkins argues that the ALJ's decision should be set aside because the ALJ "failed to provide a valid reason for rejecting a treating physician's [Dr. Bakst] opinion", and "substituted his own opinion for [Dr. Bakst's] opinion." (D.I. 9 at 17.)

■ A treating physician's opinion is generally given more weight than a non-treating physician's. *See* 20 C.F.R. § 404.1527(d)(2). Particularly when the treating physician's " 'opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time[.]' " *Morales,* 225 F.3d at 317 (quoting *Plummer,* 186 F.3d at 429) (citations omitted). Further, the "opinion of a treating physician is accorded 'controlling weight' if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence[.]' " *Thompson v. Barnhart,* 281 F.Supp.2d 770, 778 (E.D.Pa.2003) (quoting 20 C.F.R. § 404.1527(d)(2)). An ALJ may reject " 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to [the ALJ's] own credibility judgments, speculation or lay opinion." *Morales,* 225 F.3d at 317 (quoting *Plummer,* 186 F.3d at 429) (citations omitted).

■ In this case, the ALJ acted within his discretion in not giving Dr. Bakst's

opinion a significant amount of weight. Hipkins was examined by Dr. Bakst on only two occasions, October 14, 1998 and June 6, 1999. (D.I. 4 at 20, 130.) Furthermore, Dr. Bakst's opinion is not supported with treatment notes or objective medical findings. Therefore, Dr. Bakst's opinion can not be given more weight, or controlling weight, because it is not reflective of a continuing observation of Hipkins' condition over a prolonged period of time and is not supported by medically acceptable clinical and laboratory diagnostic techniques.

Moreover, contrary to Hipkins' assertion (D.I. 9 at 17–20), the ALJ did not entirely reject Dr. Bakst's opinion. Hipkins argues that while the ALJ "indicated that Dr. Bakst's opinion was not given 'a significant amount of weight as a treating source[,]' [the ALJ], in reality, rejected Dr. Bakst's opinion." (*Id.* at 18–19.) However, the ALJ's finding that Hipkins suffers from degenerative disc disease and fibromyalgia is entirely consistent with Dr. Bakst's opinion. (D.I. 4 at 18, 20, 130.) In addition, Dr. Bakst opined that Hipkins' pain increases when she is in cold and damp environments, as well as when she is in stressful environments. (*Id.* at 131.) His opinion is consistent with the ALJ's finding that, nonexertionally,[4] Hipkins is restricted "from being around cold and damp environmental conditions, and [is

limited] to environments with low levels of stress." (*Id.* at 20.) Therefore, given the consistencies between some of the ALJ's findings and Dr. Bakst's opinion, it cannot be concluded that the ALJ entirely rejected Dr. Bakst's opinion.

■ With respect to the discrepancies between the ALJ's findings and Dr. Bakst's opinion, the ALJ apparently rejected aspects of Dr. Bakst's opinion because of contradictory medical evidence, and not due to the "substitut[ion][of] his own opinion for [Dr. Bakst's] opinion." (D.I. 9 at 17.) Hipkins argues that the ALJ rejected Dr. Bakst's opinion without offering contradictory evidence supporting his rejection, and that, because Dr. Bakst indicated that "Hipkins would only be able to ... sit about two hours [ ] in an eight hour workday[,] and [ ] occasionally lift less than ten pounds[,]" Hipkins is precluded from performing sedentary work[5] and entitled to a reversal. (*Id.* at 21.) However, the ALJ rejected Dr. Bakst's opinion on this point and determined that Hipkins is capable of sedentary work, including her previous job as a purchasing agent. That rejection was based on a lack of support for Dr. Bakst's opinion, as previously established, contradictory medical evidence provided by two DDDS medical consultants,[6] diagnostic tests, Dr. Rudin's initial findings, and Dr. Norwood's evaluation. (D.I. 4 at 134, 144–151, 156, 157–164,

---

**4.** Nonexertional limitations affect a claimant's "ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling[.]" 20 C.F.R. § 404.1569a(a). Pain limitations are nonexertional and may affect a claimant's ability to perform certain jobs. *Id.*

**5.** "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and

standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a)

**6.** ALJs "are not bound by any findings made by State agency medical ... consultants[.] However, State agency medical ... consultants ... are highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2)(i)

200–215.) Both DDDS medical consultants independently reviewed the evidence in Hipkins' case file and each concluded that Hipkins had a residual functional capacity for medium work.[7] (*Id.* at 144–151, 157–164.) Furthermore, the diagnostic tests performed on Hipkins in February 1998, Dr. Rudin's findings from his initial examination of Hipkins, and Dr. Norwood's review of the evidence in Hipkins' case file do not substantiate Dr. Bakst's opinion that Hipkins is not capable of sedentary work. Therefore, the ALJ properly rejected Dr. Bakst's opinion with contradictory medical evidence. In short, the ALJ's finding that Hipkins is capable of performing sedentary work, including her previous job as a purchasing agent, is supported by substantial evidence.

## V. CONCLUSION

For the reasons stated, the court will grant defendant's motion (D.I. 11) and will deny plaintiff's motion (D.I. 8). An appropriate order will issue.

### *ORDER*

For the reasons set forth in the Court's Memorandum Opinion of today's date in this matter,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment (D.I. 11) is GRANTED, and the Plaintiff's motion for summary judgment (D.I. 8) is DENIED.

---

**7.** "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).