

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-22-2008

# Green v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4537

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Green v. Comm Social Security" (2008). *2008 Decisions.* Paper 1545.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1545

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-4537

ALEXANDER GREEN,
                    Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
                    Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 04-cv-05824)
District Judge: The Honorable Joel A. Pisano

Submitted Under Third Circuit LAR 34.1(a)
January 14, 2008

Before: BARRY, CHAGARES and ROTH, Circuit Judges

(Opinion Filed: February 22, 2008 )

OPINION

BARRY, Circuit Judge

Alexander Green appeals from an order of the United States District Court for the

District of New Jersey affirming the decision of the Commissioner of Social Security

denying his application for supplemental security income ("SSI"). We will affirm.

## I.

Green is a fifty-two-year-old man who has been unemployed since 1992. Prior to 1992, he worked for one and a half years as a water inspector for the City of Jersey City. He filed an application for SSI on June 17, 2002, claiming an inability to work since September 1, 1999 due to chronic obstructive pulmonary disease and back pain.[1] In a Disability Determination and Transmittal dated October 17, 2002, he was found not to be disabled and reconsideration of that decision was denied. On December 30, 2002, Green requested a hearing before an administrative law judge ("ALJ") and a hearing took place on August 21, 2003. The ALJ denied Green's claim in a decision dated October 14, 2003, and the Appeals Council subsequently determined that no grounds for review existed. Green filed this action in the District Court on November 24, 2004, and the District Court affirmed the final decision of the Commissioner by order dated August 28, 2006. He timely appealed.

## II.

The record before the ALJ and the District Court reveals that Green, a lifelong smoker, has a history of pulmonary disease. He had tuberculosis as a child and has had asthma for most of his life, requiring him to use an inhaler daily. Between 1995 and 1996, he visited various physicians, complaining generally of chest ailments. He was not diagnosed with any disease, nor was he prescribed any medication.

---

[1] Green filed three other applications for SSI between 1995 and 2000, all of which were denied and not appealed by him.

In June 1997, Green, who was by then taking Claritin, was diagnosed with hypertension and mild bronchial asthma; a physician determined that his hypertension required treatment but the asthma did not. More than a year later, in November 1998, Dr. Victor Marchione diagnosed Green with chronic obstructive pulmonary disease, asthma, and allergies, and accordingly prescribed him a number of medications. Green visited Dr. Marchione a number of times between 1999 and 2001. During one visit, Dr. Marchione performed a pulmonary function test that revealed "volume loss in the upper lobe of his lungs with probable atelectatic changes as well as hyper-expanded lung fields." In February 2001, Green was placed on antibiotics (in addition to the medications he was already taking).

In September 2000, Green was examined by Dr. Francky Merlin on behalf of New Jersey's Division of Disability Determination Services ("DDS"). Dr. Merlin reported that an examination of Green's lungs revealed no wheezing, rales, or rhonchi, and that his pulmonary function test was normal. He further reported that Green's gait was normal, he had no difficulty getting up from a seated position or getting on and off the examining table, and he had full use of his hands and arms when dressing and undressing. Dr. Merlin's ultimate diagnosis was that Green had asthma, which was stable, and that he should be able to sit, stand, walk, handle objects, hear, speak, travel, lift, and carry.

Green was examined again in September 2002 on behalf of the DDS by Dr. Michael Pollack. Dr. Pollack reported that Green's lungs were clear on ausculatation and percussion and negative for rales, rhonchi, and wheezing. A radiographic examination of

his chest revealed that it was normal. Dr. Pollack observed him to be ambulating without difficulty, that his gait was within normal limits, and that he had no difficulty getting up from a chair or getting on and off an examining table. Dr. Pollack ultimately diagnosed him with chronic low back pain (ruling out lumbosacral degenerative joint disease) and chronic obstructive pulmonary disease. The prognosis was "fair."

In December 2002, Green obtained a Department of Human Services Examining Physician Report from Dr. Marchione which stated he had had chronic bronchitis and chronic obstructive pulmonary disease since November 11, 1998. Dr. Marchione noted that Green's disability was progressive and characterized his degree of incapacity as ambulatory. He believed that Green was incapable of working and that the duration of his incapacity would be greater than six months but less than twelve months.

Green testified at his 2003 hearing before the ALJ that his job as a water inspector generally required him to find water leaks in buildings and on the ground, and to read and open water meters in homes and buildings. He claimed that he would be on his feet all day and that he would have to lift pipes and tools (to turn the water off with and to break the ground, respectively) weighing between 40 and 110 pounds.[2] He also claimed that he "very seldom" used a jackhammer to break the ground.

---

[2] This testimony differs from written statements made by Green in a "Disability Report" he filled out on June 17, 2002. In that report, when asked the weight of the heaviest weight he had lifted, Green answered 20 pounds. When asked the weight of items he most frequently lifted, Green answered 25 pounds. In another, similar questionnaire, Green stated that the weights of the heaviest items he had lifted were 50 and 100 pounds. When asked the weight of the items he most frequently lifted, he answered 50 pounds.

4

When asked why he was unable to work, Green testified that on certain days he can hardly breathe or move around. He claimed that three days at a time he has problems breathing, and that on those days he begins to wheeze after walking as little as half a block, yet also testified that he walks and rides his bicycle to various places and appointments. He also claimed that because of his back pain he has to do certain exercises to get out of bed in the morning, and can sit for only forty minutes before the pain forces him to get up. Finally, he admitted that he smoked between three and five cigarettes a day, and that as of two or three years ago he was still smoking two packs a day.

### III.

We have jurisdiction over this appeal under 28 U.S.C. § 1291. Our review of the findings of fact requires us to determine whether such findings are supported by substantial evidence; our review of the application of legal precepts is plenary. *Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir. 2003). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)).

### IV.

The Social Security Act defines "disability" to mean the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

5

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when not only is he unable to perform his previous job, but when he is unable to perform any other kind of substantial gainful work existing in the national economy after taking into account his age, education, and work experience. *Id.* § 423(d)(2)(A). A "physical or mental impairment" giving rise to a disability means "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

There is, under the Act, a five-step process for evaluating disability claims. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ determines whether the claimant is performing substantial gainful activity. If so, the ALJ will find the claimant not to be disabled; if not, the ALJ proceeds to the second step, where it is determined whether the claimant has a severe medically-determinable impairment. If the claimant does not have such an impairment, the ALJ will find him not to be disabled. If the claimant does, however, have a severe medically-determinable impairment, the ALJ proceeds to the third step where it is determined whether the impairment(s) meets or equals one of the impairments listed at 20 C.F.R. pt. 404 subpt. P, app. 1. If the impairment(s) meets or equals one of the listed impairments, the ALJ will find the claimant disabled. If the impairment(s) does not meet or equal a listed impairment, the ALJ at step four determines whether the claimant's residual functional capacity allows him to perform his past work.

6

If the claimant can perform his past work, he is not disabled. If he cannot perform his past work, however, the ALJ will determine at step five whether, in light of the claimant's age, education, and work experience, he is able to perform any other work in the national economy. *Id.*; *Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000). The claimant bears the burden of proof at steps one through four; the Commissioner bears the burden of proof at step five. *Sykes*, 228 F.3d at 263.

The ALJ found that Green satisfied the first step of the five-step process because he had not engaged in substantial gainful activity since, at the latest, the date of his application. At step two, the ALJ determined that the objective medical evidence established that Green suffers from pulmonary disease, an impairment adequately severe for the purposes of step two, but not severe enough to meet or equal any of the impairments listed at 20 C.F.R. pt. 404 subpt. P, app. 1 for purposes of step three.[3] Green does not contest these determinations in his appeal—he only challenges the ALJ's finding of no disability at step four.

The ALJ determined, and substantial evidence supports the conclusion, that Green was not disabled at step four because he retained the residual functional capacity for work involving "lifting and carrying objects weighing up to 50 pounds; frequently lifting and

---

[3] The ALJ also properly determined that Green's claims of back pain did not satisfy the severity test at step two because the record was devoid of any objective medical testing of Green's back. Buttressing this determination was the fact that during Green's September 2002 consultative exam, Dr. Pollack observed Green to have normal motor, sensory, and reflexive functionalities. In addition, while Green's counsel asked that the record remain open after the hearing to allow Green to submit orthopedic medical records evidencing the back ailment, the ALJ had not received any such records by the time he issued his opinion.

7

carrying objects weighing up to 25 pounds; standing, walking, and sitting up to six hours in an eight-hour day; pushing and pulling arm and leg controls; and medium work free of exposure to excessive pulmonary irritants." The ALJ determined as well that Green's subjective complaints of disabling breathing difficulty and pain were not adequately substantiated by objective medical evidence in the record. Indeed, he found that while Green had been treated for coughing, his treatment had never involved more than antibiotics, regular inhalers, and asthma medications; he never required intubation or hospitalization; pulmonary tests consistently indicated only mild disease; and examinations in 2000 and 2002 did not evidence wheezing, rhonchi, or rales.

The ALJ also properly weighed the relevant testimony from the hearing. He appropriately cited to Green's testimony that he was able to walk and ride his bicycle to appointments. Additionally, and not insignificantly, the ALJ cited Green's admission that he continues to smoke daily despite the consistent advice of his doctors over the years that he needed to quit. Because Green apparently had few if any negative effects from his smoking, the ALJ held, it was unlikely that he would react negatively to a much lesser concentration of noxious fumes on the job. For these reasons, the ALJ correctly declined to afford significant weight to the DDS's October 2002 recommendation that Green avoid *all* exposure to fumes, odors, dusts, gases, and poor ventilation. He further declined to give significant weight to Dr. Marchione's assessment that Green was unable to work because that assessment was not supported by objective medical evidence and because,

8

more fundamentally, that determination is reserved to the Commissioner. 20 C.F.R. § 404.1527(e); Soc. Security Ruling 96-6p (1996), *available at* 1996 WL 374180.

In light of Green's residual functional capacity, the ALJ turned to the question of whether he could perform any of his past relevant work as a water inspector. Social Security Ruling 82-61 states that a claimant will be found not disabled at step four when he retains the residual functional capacity to perform the actual job duties of a particular past job or "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." Soc. Security Ruling 82-61 (1982), *available at* 1982 WL 31387. The Ruling further provides that the descriptions of jobs in the *Dictionary of Occupational Titles* can be relied upon to define the job as it is usually performed in the national economy. It was therefore proper for the ALJ to determine that Green could perform his job as it is generally performed in the national economy according to the *Dictionary*'s job description for a "Meter Reader (utilities; waterworks)." *Dictionary of Occupational Titles* § 209.567-010.[4] Although Green

---

[4] The *Dictionary* describes the position as follows:

> Reads electric, gas, water, or steam consumption meters and records volume used by residential and commercial consumers: Walks or drives truck over established route and takes readings of meter dials. Inspects meters and connections for defects, damage, and unauthorized connections. Indicates irregularities on forms for necessary action by servicing department. Verifies readings to locate abnormal consumption and records reasons for fluctuations. Turns service off for nonpayment of charges in vacant premises, or on for new occupants. Collects bills in arrears. Returns route book to business office for billing purposes. May be designated according to type of meter read as Electric-Meter Reader (utilities); Gas-Meter Reader (utilities); Steam-Meter Reader (utilities); Water-Meter Reader (waterworks).

testified that he previously performed additional physical work not included in this job description, he also testified that the time he spent doing that work was minimal.

In sum, the ALJ found that while the record supported Green's claim of some form of a pulmonary condition, it did not support the claimed severity of that condition. We will affirm the order of the District Court.