NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4596
_____

KEITH JEREMY ILLIG,
Appellant

v.

COMMISSIONER SOCIAL SECURITY
_____

On Appeal from the District Court
for the Western District of Pennsylvania
D.C. Civil No. 2-13-cv-00380
(Honorable Robert C. Mitchell)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 06, 2014

Before: HARDIMAN, SCIRICA, and ROTH, *Circuit Judges*

(Filed: July 1, 2014)

_____

OPINION OF THE COURT
_____

**SCIRICA**, *Circuit Judge.*

Keith J. Illig appeals from an order of the District Court affirming the decision of

the Administrative Law Judge finding that Illig is not entitled to Supplemental Security

Income and granting the motion of the Acting Commissioner of Social Security for

summary judgment. Because the ALJ's finding that Illig failed to meet the IQ

requirement for mental retardation in the Social Security Administration's Listings of Impairments was not supported by substantial evidence, the District Court erred in affirming the ALJ's decision. Accordingly, we will vacate the court's order and remand the matter for further proceedings.[1]

## I.

Appellant Keith J. Illig is a high school graduate with no work history.[2] On July 15, 2009, Illig protectively filed an application for SSI benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383f, alleging he became disabled on October 1, 1988. School records show Illig received special education instruction throughout his school career but was mainstreamed in certain subjects. Medical records indicate Illig has been diagnosed with a learning disability, depressive disorder, anxiety disorder, and borderline intellectual functioning. In 1994, at age 8, Illig was noted to have intelligence in the "low average" range. In 2000, at the age of 14, Illig was assessed with a verbal IQ score of 55, performance IQ score of 68, and full-scale IQ score of 57.

In January 2005, in connection with a prior claim for SSI benefits, Illig was evaluated by psychologist Julie Uran, Ph.D. At the time of this evaluation, Illig was 18 years of age and in 12th grade. Dr. Uran tested Illig pursuant to the Wechsler Adult Intelligence Scale–III format and assessed Illig with a verbal IQ score of 70, performance IQ score of 80, and full scale IQ score of 73. Dr. Uran also concluded that Illig's overall

---

[1] The District Court had jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). We have jurisdiction pursuant to 28 U.S.C. § 1291.

[2] Because we write for the benefit of the parties, we only briefly address the evidence Illig produced in support of his application for SSI benefits.

intellectual abilities were within the mild range of retardation.

Illig's July 15, 2009, claim for SSI benefits was denied at the initial level of the administrative review process. At Illig's request, the ALJ held a hearing on February 11, 2011, at which both Illig, represented by counsel, and a vocational expert testified. On March 11, 2011, the ALJ ruled Illig was not disabled and not entitled to SSI benefits. The Appeals Council declined to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.

On March 20, 2013, Illig commenced an action in the United States District Court for the Western District of Pennsylvania seeking judicial review of the Commissioner's final decision.[3] Both parties moved for summary judgment. On October 9, 2013, the District Court affirmed the Commissioner's final decision that Illig was not disabled within the meaning of the Act and granted the Commissioner's motion for summary judgment. Illig filed this timely appeal.

## II.

Illig advances two arguments on appeal. First, he contends the District Court's grant of summary judgment for the Commissioner should be reversed because the ALJ erred in concluding that he did not meet or equal the IQ requirement of Listing 12.05C for mental retardation, 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C. Second, Illig argues that we should remand the case because the ALJ failed to make any findings on the other

---

[3] The parties agreed that the matter would be referred to a Magistrate Judge and that the Magistrate Judge's decision would be the decision of the District Court.

Listing 12.05C criteria.[4]  As noted, we will vacate the District Court's order and remand.

**A.**

Like the District Court, we must uphold the agency's determination unless it is not supported by substantial evidence in the record.  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (internal quotation marks and citation omitted).  Such evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  *Id.* (internal quotation marks and citation omitted).

To be eligible for SSI disability benefits, a claimant must show he has a medically determinable impairment of such severity that it prevents him from engaging in any past relevant work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(A), (B); 20 C.F.R. § 416.905(a).  The Commissioner has developed a five-step sequential evaluation process to determine whether a claimant is disabled under the Act.[5]  20 C.F.R. § 416.920.  This case concerns the third step in that process—whether Illig has an impairment that meets or equals the requirements of an

---

[4] Illig alternatively requests that we grant him SSI benefits.  But we will remand to give the ALJ the opportunity to address whether Illig met or equaled the other Listing 12.05C criteria.  *See Reefer v. Barnhart*, 326 F.3d 376, 382 (3d Cir. 2003) (remanding because the ALJ failed to develop the record adequately and explain why he credited certain medical reports over others).

[5] This five-step process requires the ALJ to consider sequentially whether the claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of an impairment in the Listings, (4) can return to his past relevant work, and, if not, (5) whether he can perform other work in the national economy.  20 C.F.R. § 416.920.

impairment in the Listings. The ALJ determined that Illig's severe impairments—a learning disability, borderline intellectual functioning, depressive disorder, and anxiety disorder—did not meet or equal, singly or in combination, the requirements of a presumptively disabling impairment under the Listings.[6]

Illig argues the ALJ's decision was not supported by substantial evidence because the ALJ erred in finding Illig's impairments did not meet or equal Listing 12.05C for mental retardation. At the time of the ALJ's decision, Listing 12.05C provided, in relevant part:

> 12.05 *Mental Retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.05, 12.05C.[7]

Therefore, to meet or equal Listing 12.05C, a claimant needs to show: (1) a valid verbal, performance, or full scale IQ of 60 through 70, (2) a physical or other mental

---

[6] The Listings are a regulatory device used to streamline adjudication of benefits by identifying those claimants whose medical impairments are so severe that they are considered presumptively disabled, making further inquiry into their vocational background unnecessary. 20 C.F.R. § 416.925(a); *see Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

[7] This regulation was revised in 2013 and now refers to "intellectual disability" rather than "mental retardation." Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499 (Aug. 1, 2013) (to be codified at 20 C.F.R. pts. 404, 416). The substance of the Listing has not changed.

impairment imposing an additional and significant work-related limitation of function, and (3) that the mental retardation initially manifested during the developmental period, which means before age 22. *Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir. 2003).[8] Only one of the verbal, performance, or full scale IQ scores must meet the requirement of being between 60 and 70. *Id.* at 186. And we consider the claimant's lowest score for the IQ requirement. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00D ("In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."); *Burns v. Barnhart*, 312 F.3d 113, 125 n.6 (3d Cir. 2002) (noting that the regulations direct us to use the lowest score for the IQ requirement under Listing 12.05 if the intelligence test administered customarily yields more than one IQ score).

The ALJ credited Illig's January 2005 Wechsler Adult Intelligence Scale–III IQ scores—including Illig's verbal IQ score of 70—in his decision finding that Illig failed to meet or equal Listing 12.05C:

> Finally, the 'paragraph C' criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. As noted above, the claimant has a full-scale IQ of 73, a verbal IQ of 70, and a performance IQ of 80 (Exhibit B1/F1).

The ALJ correctly used Illig's verbal IQ score of 70, the lowest score. But the ALJ erred

---

[8] The parties dispute whether a claimant must also meet a fourth requirement—showing deficits in adaptive functioning—in order to meet or equal Listing 12.05C. But we need not reach this issue because the ALJ erred in determining that Illig failed to meet the IQ requirement for Listing 12.05C and made no findings on whether Illig demonstrated deficits in adaptive functioning.

in concluding Illig's valid verbal IQ score of 70 did not meet the requirement of Listing 12.05C—that the IQ score be a "valid verbal, performance, or full scale IQ of 60 through 70." A valid verbal IQ score of 70 meets that requirement, so the ALJ's conclusion is not supported by substantial evidence. *See Markle*, 324 F.3d at 186–87 (concluding an ALJ erred in determining a claimant with a valid full scale IQ of 70 did not meet the IQ requirement of Listing 12.05C); *see also Maresh v. Barnhart*, 438 F.3d 897, 899–900 (8th Cir. 2006) (noting the Commissioner did not contest that claimant's verbal IQ score of 70 met the IQ requirement of Listing 12.05C). Accordingly, the District Court erred in granting summary judgment to the Commissioner, and we will vacate that order.

**B.**

Illig next argues that because the ALJ failed to make any findings on the other Listing 12.05C criteria, we must remand the case to the ALJ for further proceedings. The Commissioner contends remand would be futile because the ALJ's decision contains sufficient evidence for us to conclude Illig has failed to demonstrate that he has deficits in adaptive functioning as required by Listing 12.05C.[9]

The ALJ must set forth the reasoning for his decision in order to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). "[T]he function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Though the ALJ concluded Illig did

---

[9] We will assume without deciding that showing deficits in adaptive functioning is a fourth requirement of Listing 12.05C for the limited purpose of evaluating whether remand to the ALJ is required in this case.

not meet or equal Listing 12.05C because Illig did not meet the IQ requirement and did not have "a physical or other mental impairment imposing an additional and significant work-related limitation of function," the only reasoning in the ALJ's decision on Listing 12.05C concerned Illig's purported failure to meet the IQ requirement. That conclusion was erroneous because Illig's verbal IQ score of 70 met that requirement.

The ALJ made no findings concerning the other Listing 12.05C requirements— whether Illig has other physical or mental impairments imposing an additional and significant work-related limitation of function, whether Illig's mental retardation initially manifested before age 22, or whether Illig demonstrated deficits in adaptive functioning.[10] Accordingly, because the ALJ failed to set forth sufficient reasoning to permit meaningful review of his decision, remand of this matter is required.

## III.

For the foregoing reasons, we will vacate the District Court's order granting summary judgment to the Commissioner and remand to the District Court with instructions to remand to the ALJ for further proceedings.

---

[10] Because the ALJ never made any findings as to whether Illig demonstrated deficits in adaptive functioning, we reject the Commissioner's contention that we may affirm on this alternative basis.