**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-3353
_____

| | |
|---|---|
| Pamela Clark, | * |
| | * |
| Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Eastern District of Arkansas. |
| Kenneth S. Apfel, Commissioner, | * |
| Social Security Administration, | * |
| | * |
| Appellee. | * |

_____

Submitted: February 9, 1998

Filed: April 17, 1998
_____

Before McMILLIAN, WOLLMAN, and LOKEN, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

   Pamela Clark appeals from the district court's[1] judgment affirming the denial of her application for supplemental security income benefits. We affirm.

_____

   [1]The Honorable Jerry W. Cavaneau, United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

**I.**

Clark is a 33-year-old woman with a ninth grade education. Her past relevant work consisted of a three-month period during which she operated a staple gun at a cushion factory. She has not been employed since 1991. On June 28, 1993, Clark filed an application for supplemental security income benefits, claiming that she was disabled and unable to work because of a seizure disorder and a nervous condition.

The Social Security Administration denied Clark's application initially and again on reconsideration. Clark then requested a hearing before an administrative law judge (ALJ). Following the hearing, Clark was evaluated by Dr. Russell Dixon, a psychologist specializing in clinical neuropsychology. Dr. Dixon administered the Wechsler Adult Intelligence Scale-Revised (WAIS-R), an I.Q. examination. The results of this examination indicated that Clark had a verbal I.Q. of 71, a performance I.Q. of 66, and a full scale I.Q. of 67. Dr. Dixon concluded that Clark suffered from mild mental retardation and intermittent explosive disorder. Clark submitted Dr. Dixon's psychological evaluation and the accompanying I.Q. scores to the ALJ.

After receiving this additional evidence, the ALJ issued a decision concluding that Clark was not disabled as defined by the provisions of the Social Security Act. Pursuant to the five-step regulatory framework set forth at 20 C.F.R. § 416.920(a)-(f), the ALJ found that Clark had not engaged in substantial gainful activity since 1991 and that she suffered from a severe impairment. However, the ALJ further concluded that Clark did not have an impairment or combination of impairments equivalent to a listed impairment and that her condition did not prevent her from performing her past relevant work. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step analysis). Moreover, after applying the principles enunciated in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), the ALJ concluded that Clark's allegations regarding the severity of her seizure condition were not credible.

The appeals council denied Clark's request for review, and the ALJ's decision thereby became the final decision of the Commissioner. Clark appealed the decision to the district court pursuant to 42 U.S.C. § 405(g). The district court granted the Commissioner's motion for summary judgment.

**II.**

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Spradling v. Chater, 126 F.3d 1072, 1073-74 (8th Cir. 1997). Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion. See Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). In determining whether the existing evidence is substantial, "we must consider evidence that detracts from the [Commissioner's] decision as well as evidence that supports it." Id. We may not reverse the Commissioner's decision merely because of the existence of substantial evidence that would have supported a contrary outcome. See Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993).

Clark argues that the Commissioner's findings in the third step of the regulatory framework are not supported by substantial evidence. The third step provides that "[i]f you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience." 20 C.F.R. § 416.920(d). Among the impairments listed at 20 C.F.R., Part 404, Subpart P, App. 1 is section 12.05C, which deals with mental retardation. Section 12.05C provides that the required level of severity for mental retardation is met when a claimant demonstrates "[a] valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function."

-3-

Dr. Dixon placed Clark's performance I.Q. at 66 and her full scale I.Q. at 67. Either of these scores, if valid, satisfies the first requirement under section 12.05C. The ALJ, however, rejected these scores, finding that they were not credible in light of the following factors: (1) the scores were based on a one-time examination by a non-treating psychologist and were not entitled to controlling weight; (2) no other physician had ever found Clark retarded or suspected as much; (3) Clark was literate and had worked in the private sector; (4) Clark's appearance and demeanor at the hearing were unremarkable; (5) there was no evidence that Clark's daily activities were restricted; (6) Clark exhibited no deficit in social functioning; (7) Clark demonstrated no significant deficiency of concentration, persistence, or pace; and (8) there was no evidence of deterioration or decompensation in work settings.

In Cook v. Bowen, 797 F.2d 687 (8th Cir. 1986), we held that the claimant's I.Q. scores, which were apparently accepted as valid, when coupled with his other impairment entitled claimant to benefits under section 12.05C. The Commissioner is not required to accept a claimant's I.Q. scores, however, and may reject scores that are inconsistent with the record. See Mackey v. Shalala, 47 F.3d 951, 953 (8th Cir. 1995). Indeed, test results of this sort should be examined "to assure consistency with daily activities and behavior." Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) (per curiam). It was therefore proper for the ALJ to examine the record in assessing the reliability of Clark's scores. For purposes of our review, then, the question is whether the decision to disregard Clark's scores as unreliable is supported by substantial evidence on the record as a whole. If we find such evidence, we must affirm. See Mackey, 47 F.3d at 953 ("Nothing in [claimant's] prior work history or educational background, and nothing in the medical evidence before the ALJ, supports an I.Q. so low as to reflect mild mental retardation"); Popp, 779 F.2d at 1499-1500 (I.Q. scores properly discredited where inconsistent with claimant's college record and work history as an algebra teacher); Muse v. Sullivan, 925 F.2d 785, 789-90 (5th Cir. 1991) (I.Q. results questionable in light of claimant's work experience, education, and demeanor at the hearing); but cf. Brown v. Secretary of Health & Human Serv., 948 F.2d 268,

270 (6th Cir. 1991) (claimant's modest functional abilities not inconsistent with low I.Q. score).

We conclude that there is substantial evidence in the record to support the Commissioner's decision. First, as the district court pointed out, Clark's low I.Q. scores are the product of her first and only meeting with Dr. Dixon. A one-time evaluation by a non-treating psychologist is not entitled to controlling weight. See Loving v. Department of Health & Human Serv., 16 F.3d 967, 971 (8th Cir. 1994). Second, the record reveals that Clark's low I.Q. scores are inconsistent with her daily functional abilities and her prior medical record. Clark is not significantly restricted in her daily activities because of any mental impairment. She is able to read and to write and to count money. She has a driver's license and does the majority of the cooking, cleaning, and shopping for her household. She is the primary caretaker for her young daughter. Furthermore, Clark's other medical records make no mention of any suspected intellectual impairment. See Popp, 779 F.2d at 1500 ("The ALJ is required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior").

Moreover, the introductory language of section 12.05 states that "[m]ental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)." At the time of her examination by Dr. Dixon, Clark was 29 years old. Nothing in her extensive medical records indicates that she was ever suspected of being mildly mentally retarded prior to this date. Although this fact does not necessarily mean that Clark's intellectual shortcomings were not manifested before age 22, we find it significant in gauging the reliability of Clark's current scores. See Williams v. Sullivan, 970 F.2d 1178, 1185 (3d Cir. 1992) (evidence insufficient to establish a mental impairment existing prior to age twenty-two where earlier physician's reports were silent with respect to claimant's intellectual capacity); but cf. Luckey v. Department of Health & Human Serv., 890 F.2d 666, 668 (4th Cir. 1989) (absent

evidence of a change in claimant's intellectual functioning, it is assumed claimant's I.Q. remained relatively constant). We therefore conclude that the Commissioner's decision to disregard Clark's I.Q. results was supported by substantial evidence on the record as a whole and that summary judgment was properly granted by the district court.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.