# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

―――――――――

No. 98-3193

―――――――――

ERROL R. GRAY,                              *
                                            *
            Appellant,                      *
                                            *
                                            *  Appeal from the United States
        v.                                  *  District Court for the
                                            *  District of South Dakota.
                                            *
KENNETH S. APFEL,                           *
Commissioner                                *
of Social Security,                         *
                                            *
            Appellee.                       *


―――――――――

Submitted: June 18, 1999
     Filed: September 24, 1999

―――――――――

Before MURPHY and MAGILL, Circuit Judges, and REASONER,[1] District
Judge.

―――――――――

REASONER, District Judge.


        Claimant appeals from the district court's[2] order affirming
the decision of the Commissioner of Social Security Administration
("Commissioner") denying disability insurance benefits and
supplemental security income ("SSI"). We affirm.

―――――――――――――――――

[1]The Honorable Stephen M. Reasoner, United States District
Judge for the Eastern District of Arkansas, sitting by
designation.

[2]The Honorable Richard H. Battey, United States District
Judge for the District of South Dakota.

## I. Background

Erroll R. Gray ("Gray") was 49 years old on the alleged onset date of his disability, March 28, 1995. He had past relevant work as a furniture delivery driver and metal finisher. In February, 1995, Gray suffered a back injury at work and stopped working on March 28, 1995. Gray underwent back surgery – microdiskectomy - performed by Dr. Larry Teuber in April, 1995.[3] He has not worked since that time and alleges he still suffers from constant lower back pain and is limited in activity due to his injury. On December 18, 1995, Gray filed an application for disability insurance benefits and for supplemental security income pursuant to 42 U.S.C. § 423 and § 1381a (1994) respectively. His application was denied through the reconsideration stage and he requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on March 6, 1997. The ALJ issued a decision on May 21, 1997, that Gray was not disabled.

In assessing the sequential evaluation process, the ALJ noted initially that Gray had not performed any substantial gainful activity since the alleged onset date. Secondly, the ALJ found from the medical evidence that Gray had degenerative disk disease of the lumbosacral spine. He concluded Gray's medical condition constituted a severe impairment but that Gray did not have an impairment or a combination of impairments listed in or medically equal to the listed impairments in Appendix 1 to Subpart P. to Social Security Regulation No. 4. The ALJ further found that although claimant could not perform his past relevant work, in light of the evidence of record, he still retained the residual

---

[3]The claimant underwent a left L3 – L4 microdiskectomy for intervertebrae disk displacement and L4 radiculopathy.

functional capacity to perform the full range of light work.[4]  In reaching this conclusion, the ALJ found that claimant's subjective complaints and limitations were not fully credible.   In assessing credibility, the ALJ considered the medical evidence in the record, Gray's own testimony concerning the degree and duration of the pain, Gray's daily activities, his lack of prescription medication or even over-the-counter pain relievers for the alleged pain, and his failure to follow through with rehabilitation.   The ALJ discounted the testimony of Gray's vocational expert as not supported by the evidence and potentially biased.[5]   For similar reasons, the ALJ gave little weight to the testimony of Betty Blard, who had resided with claimant for a number of years.

---

[4] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §404.1567(b).

[5]Gray was evaluated and given the General Aptitude Test Battery ("GATB") test by Margot Burton, a rehabilitation consultant and placement specialist in October, 1995.  Lynn Meiners, Ph.D., performed a vocational assessment at the request of Gray's attorney and in connection with Gray's disability claim, in April, 1996, relying on Margot Burton's GATB test results.

In the final step of his analysis, the ALJ concluded that given Gray's age, education, and past work experience, there were significant work opportunities for him. The ALJ further found that Gray maintained the residual functional capacity for a full range of light work. The ALJ noted that the Medical-Vocational Guidelines ("Grids") revealed that there are "approximately 1600 separate sedentary and light jobs existing" in the national economy which Gray could perform. T. 17. In conclusion, the ALJ determined that Gray was not disabled and denied his claim. The Appeals Council declined review and Gray filed a complaint in district court on January 23, 1998.

## II. Discussion

This Court's role on review is to determine "whether the Commissioner's findings are supported by substantial evidence in the record as a whole." *Clark v. Apfel,* 141 F.3d 1253, 1255 (8th Cir. 1998).

> Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion. In determining whether the existing evidence is substantial, 'we must consider evidence that detracts from the [Commissioner's] decision as well as evidence that supports it.' We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome.

*Pierce v. Apfel*, 173 F.3d 704, 706 (8th Cir. 1999) (citations omitted).

After the claimant has established that he is unable to perform his past relevant work, the burden shifts to the Commissioner to show that the claimant has the physical residual capacity to perform a significant number of other jobs in the

national economy that are consistent with his impairments and vocational factors such as age, education, and work experience. *See Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). "If an applicant's impairments are exertional, (affecting the ability to perform physical labor), the Commissioner may carry this burden by referring to the medical-vocational guidelines or 'Grids,' which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment." *Id.* However, when a claimant is limited by a non-exertional impairment, such as pain or mental incapacity, the Commissioner may not rely on the Grids and must instead present testimony from a vocational expert to support a determination of no disability. *See Id.; O'Leary v. Schweiker*, 710 F.2d 1334, 1338-39 (8th Cir. 1983).

Gray contends that the ALJ erred in relying on the Grids to conclude that he was not disabled because the ALJ ignored evidence of non-exertional impairments, including his limited mental ability and subjective complaints of pain. Gray further contends the ALJ's adverse credibility determinations, discounting the testimony of the vocational expert and other witnesses, are not supported by substantial evidence.

With respect to the evidence of Gray's mental capacity, Gray relies on this Court's decision in *Simons v. Sullivan*, 915 F.2d 1223 (8th Cir. 1990) for reversal. In *Simons*, this court reversed the denial of disability benefits because the ALJ ignored undisputed vocational expert testimony[6] that the plaintiff was not presently qualified intellectually for "light work", although he

---

[6]The Eighth Circuit noted that the ALJ did not even address the vocational expert's testimony. *Simons* at 1224.

was physically qualified to perform the work. The Court concluded:

> The vocational expert's undisputed testimony is that Simons currently does not have the mental ability and training to perform light and sedentary work. This opinion is neither supported nor contradicted by the fact that Simons has a ninth grade education. We are in no position to gauge the educational requirements of light work as defined in the Guidelines, but we acknowledge that Simons' education is minimal. Given the uncontradicted testimony of a vocational expert who has first hand knowledge of the claimant, we must reverse the ALJ and direct the Secretary to grant Simons an award of benefits.

*Simons* at 1225.

The facts in *Simons* are distinguishable from the facts in this case. In *Simons,* the vocational counselor gave uncontroverted testimony that Simons was not intellectually qualified to perform light work, although he was physically able to do so. In other words, Simons mental limitations alone were sufficient to prevent him from performing light work. On the other hand, claimant's rehabilitation consultant and vocational expert in this case concluded that Gray could not work because of the <u>combination</u> of his mental (general learning ability) and physical limitations (limited finger and manual dexterity). As noted by the ALJ, there is no medical evidence that <u>either</u> one of these limitations restrict Gray's ability to work. The only objective evidence supporting the experts' assessment of Gray's mental and physical limitations came from GATB testing done by Margot Burton, the rehabilitation consultant. This testing, performed by a non-medical expert, is not competent medical evidence of a mental or physical impairment. *See* 20 C.F.R. §416.913 (listing sources of medical evidence)*; Jones v. Callahan*, 122 F.3d 1148, 1153 n. 5 (8th Cir. 1997). Other than the aptitude testing obtained during litigation, there is no medical evidence regarding claimant's vague

allegation of limited mental ability.

On the other hand, a review of the record reveals substantial evidence to support the conclusion of the ALJ that Gray is mentally capable of working. Unlike Simons who only completed the ninth grade, Gray was able to complete a high school education and vocational training without any apparent difficulty, and subsequently used his vocational training for four years. He also learned the skills necessary to work as a metal finisher and painter. Gray does not allege a deterioration of his mental abilities and did not seek significant ongoing medical treatment for his allegedly disabling mental impairment. In light of the complete absence of medical evidence establishing a mental impairment and in view of the evidence suggesting that Gray does have the mental capacity to succeed in some jobs in the national economy, the ALJ did not err in rejecting the opinions of claimant's vocational expert and concluding that Gray was not disabled.[7]

Gray also argues that the ALJ's credibility determinations with regard to his complaints of pain are not supported by substantial evidence. In analyzing a claimant's subjective complaints of pain, an ALJ must examine:

> (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints. The ALJ may discount subjective complaints of pain if

_____

[7]As previously noted, the ALJ in *Simons* ignored the claimant's vocational expert's undisputed testimony. Here the ALJ specifically addressed the testimony of Gray's vocational expert along with the other evidence of record.

inconsistencies are apparent in the evidence as a whole.

*Spradling v. Chater*, 126 F.3d 1072, 1074-75 (8th Cir. 1997) (citing *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984)).

At the hearing, Gray testified he is unable to walk because of constant pain radiating from his waist to his shoulders, accompanied by numbness, tingling, and partial paralysis in his lower extremities. He stated that the April, 1995 surgery only helped decrease some of the pain in his left lower extremity and that his pain was so severe that it required him to lie down approximately one and one half hours, at least once per day. Gray estimated that he could lift and carry a maximum of 30 pounds, walk no farther than one half block, and perform no repetitive bending, squatting, or climbing and that he must change positions, alternating standing and sitting, to decrease the level of pain. Gray argues that the ALJ may only discount subjective complaints of pain if there are inconsistencies in the evidence as a whole, *see Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) and that the ALJ's decision does not identify any "inconsistencies" which would lead one to reject Gray's pain complaints.

In fact, the ALJ did make a finding that the severity and duration of Gray's alleged pain was disproportionate to the impairment established in the medical records. Additionally, the ALJ found that Gray's inconsistent statements regarding his pain cast doubt upon his credibility. For example, the ALJ noted that Gray stated in an October, 1995 examination with Dr. Teuber that he had never had any improvement in his pain. However, Dr. Teuber's records revealed that Gray had previously made two clear statements that he had complete resolution of his pain after the operation and that he had significant improvement in his weakness.

-8-

The ALJ also noted that Gray did not take prescription or over-the-counter medications for his alleged disabling pain[8] and failed to follow through with suggested rehabilitation treatment. "The ALJ may properly consider both the claimant's willingness to submit to treatment and the type of medication prescribed in order to determine the sincerity of the claimant's allegations of pain." *Thomas v. Sullivan,* 928 F.2d 255, 259 (8th Cir. 1991) (citations omitted). Dr. Teuber also noted Gray's lack of interest in doing any sort of activity, and that Gray had just been sitting at home and drinking beer to relax. See T. at 134. Dr. Teuber also expressed concern about Gray's lack of interest in returning to work. *See id.*

Finally, the ALJ observed that Gray engaged in extensive daily activities, which is inconsistent with the level of pain alleged. *See Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (plaintiff dressed and bathed herself, did some housework, cooking and shopping); *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1995) (daily caring for one child, driving when unable to find a ride and sometimes going to grocery); *Nguyen v. Chater*, 75 F.3d 429 (8th Cir. 1995) (visiting neighbors, cooking own meals, doing own laundry and attending church); *Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (carrying in grocery bags, carrying out garbage, driving wife to and from work inconsistent with extreme, disabling pain); *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995) (plaintiff cooked breakfast, "sometimes" needed help with household cleaning and other chores, visited friends and relatives and attended church twice a month); *Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir. 1993)

---

[8]The evidence reveals that Gray took Tylenol III for a short time, but discontinued its use because it had little effect.

(plaintiff lived alone, drove, shopped for groceries and did housework with some help from neighbor). The evidence suggests that Gray was able to care for himself, do household chores, drive a car for short distances, and perform other miscellaneous activities. The ALJ concluded that Gray's unemployment was due to his own choice rather than the result of disabling impairments. While Gray testified that he could only perform these daily activities with significant pain and breaks, the ALJ discredited Gray's limitations as not supported by the record as a whole.[9]

## III. Conclusion

In light of the medical and other evidence of record, the ALJ's credibility determinations are supported by substantial evidence and the ALJ properly concluded that Gray does not suffer from a non-exertional limitation that precludes reliance on the grids to determine Gray's capacity to work. The judgment is, therefore, affirmed.

---

[9]Gray reported dramatic improvement in left leg weakness and back pain following back surgery in April, 1995. Drs. Teuber and Caughfield noted that claimant demonstrated normal to only minimally abnormal deficits on physical examination. Furthermore, a lumbar MRI revealed no evidence of recurrent or residual disc-herniation, and only very mild central disc protrusion without nerve root impingement  Dr. Caughfield also noted that claimant had only a ten percent impairment to the body as a whole. Claimant reported in December, 1995 that he could lift 20 pounds and testified at his hearing in March, 1997 that he could lift up to 30 pounds. This evidence along with Dr. Caughfield's medical opinion arguably provides substantial support for the ALJ's determination that claimant could perform light work.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.