# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3563

_____

| | |
|---|---|
| Robert Johnson, | * |
| | * |
| Petitioner - Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the Eastern |
| | * District of Arkansas |
| Jo Anne B. Barnhart, Commissioner, | * |
| Social Security Administration, | * |
| | * |
| Respondent - Appellee. | * |
| | * |

_____

Submitted: May 14, 2004
Filed: December 9, 2004

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Petitioner-Appellant Robert Johnson appeals the district court's[1] order affirming the Commissioner's determination that he was not disabled. We affirm.

_____

[1]The Honorable John F. Forster, Jr., United States Magistrate Judge for the Eastern District of Arkansas

I.


Johnson applied for supplemental security income (SSI) on March 10, 1997. He alleged that he was disabled due to headaches, low back pain, hip pain, and pain in his arms and hands. Johnson subsequently added depression as a claimed mental impairment.


At the request of the Social Security Administration (SSA), Dr. Trent Marcus, M.D., Johnson's family physician, examined Johnson. Dr. Marcus diagnosed Johnson to have chronic low back pain with osteoarthritis, non-cardiac chest pain, headaches, hypertension, and possible depression. Dr. Marcus documented that Johnson did not have neurological or psychiatric problems (other than the possible depression). The physical exam showed that Johnson did not have difficulty with his ears, neck, lungs, gait, coordination, or limb function. Dr. Marcus found Johnson to have normal range of motion in his spine, shoulders, elbows, wrists, hands, hips, knees, and ankles.


On July 23, 1998, Dr. Richard C. Maddock, Ph.D., a psychologist, performed a psychological evaluation of Johnson, also at the request of the SSA. Dr. Maddock documented that the Wechsler Adult Intelligence Scale - Revised test revealed that Johnson had a verbal IQ of 64, a performance IQ of 60, and a full scale IQ of 58. Dr. Maddock recorded that on the Wide Range Achievement Test-3, Johnson had difficulty with all areas, including understanding the instructions given to him. On the Wahler Physical Symptoms Inventory test, Johnson's results "strongly suggest[ed] both somatic components to his complaints and malingering." His score "suggested [a] gross exaggeration of symptoms." Results of the Minnesota Multiphasic Personality Inventory-2 test, indicated that Johnson answered randomly to the questions. Dr. Maddock concluded that little or no weight should be given to the

results of the Minnesota Multiphasic Personality Inventory-2 test because it had not been completed properly. Dr. Maddock determined that Johnson was malingering and diagnosed him with alcohol abuse, borderline personality disorder, and hip and back pain.

Johnson's application was denied initially and on reconsideration. Following a hearing at which Johnson was represented by counsel, an administrative law judge (ALJ) denied Johnson's disability application. On May 11, 2001, the Appeals Council remanded the case for further administrative proceedings.

Dr. Maddock tested Johnson again on September 24, 2001 at the request of the SSA. Dr. Maddock conducted a Full Psychological Test Battery, Mental Status and Evaluation of Adaptive Functioning (Adult). Again, a Minnesota Multiphasic Personality Inventory-2 test indicated Johnson answered randomly without regard to the content of the question. Dr. Maddock concluded that little or no weight should be given to this exam since Johnson's psychological profile appeared to be invalid. Dr. Maddock stated that failure to accurately respond to test items may have been due to lack of cooperation, malingering, or to confusion on Johnson's part. Dr. Maddock also documented that Johnson's Wechsler Memory Scale - Revised scores were not consistent with his scores on the two other tests of intellectual ability. Dr. Maddock stated that such large variations in test scores are unusual. Dr. Maddock also noted that although Johnson complained of a poor memory, the scores indicated his memory was particularly strong. However Dr. Maddock did note in his report that the consistency of Johnson's scores on the Wechsler Adult Intelligence Scale - Revised indicated some degree of reliability as to those scores. Yet, Dr. Maddock was concerned that the consistency of the scores might also have been due to malingering. Finally, Dr. Maddock administered the Computerized Assessment of Response Bias exam. This test is given when a person is believed to be malingering. Johnson's test results indicated strong evidence of malingering. Despite unreliable test results due

to Johnson's malingering, Dr. Maddock diagnosed Johnson with alcohol abuse and mild mental retardation. Dr. Maddock questioned the reliability of his conclusions, however, because Dr. Maddock believed that Johnson had not been open and honest during the interview and there was evidence of malingering and exaggeration of symptoms.

At a subsequent administrative hearing on November 20, 2001, Johnson was again represented by counsel and presented testimony, including the opinion of a vocational expert. On December 26, 2001, the ALJ found that: 1) Johnson was not under a disability as defined by the Social Security Act; 2) Johnson did not meet or equal any of the listed impairments listed in Appendix 1, Subpart P, Regulation No. 4; and 3) Johnson's past relevant work did not require the performance of work-related activities precluded by his physical and mental residual functional capacity. The ALJ denied Johnson's application. On March 27, 2002, the Appeals Council denied Johnson's request for review, making the ALJ's decision the Commissioner's final decision.

Johnson sought judicial review of the Commissioner's final decision. On September 15, 2003, a magistrate judge affirmed the Commissioner's administrative decision. Johnson appeals that decision.

II.

We review de novo the district court's decision to uphold the denial of social security benefits. Pettit v. Apfel, 218 F.3d 901, 902 (8th Cir. 2000). "Our review of the Commissioner's decision . . . is deferential, and we do not substitute our own view of the evidence for that of the Commissioner." Kelley v. Barnhart, 372 F.3d 958, 960 (8th Cir. 2004). We review the decision to ensure that it "is supported by

substantial evidence in the record as a whole." Gaddis v. Chater, 76 F.3d 893, 895 (8th Cir. 1996); see also Dixon v. Barnhart, 353 F.3d 602, 604 (8th Cir. 2003). Substantial evidence is evidence that a reasonable mind would find adequate to support a decision, considering both evidence that detracts from and evidence that supports the Commissioner's decision. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000). The mere fact that some evidence may support a conclusion opposite to that reached by the Commissioner does not allow this Court to reverse the decision of the ALJ. Gaddis v. Chater, 76 F.3d 893, 895 (8th Cir. 1996). "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the decision of the Commissioner." Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996).

In evaluating disability claims, we conduct a five-step sequential evaluation: 1) is the claimant engaging in substantial gainful activity; 2) does the claimant have severe impairment(s); (3) does the impairment or combination of impairments meet or equal an impairment listed in the listing of impairments in 20 C.F.R. Part 404, Appendix 1, Subpart P (2003); 4) does the impairment or combination of impairments prevent the claimant from doing past relevant work; and 5) does the impairment or combination of impairments prevent the claimant from doing any other work which exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)-(f) (2003). In this case, the ALJ concluded at the third step that Mr. Johnson's impairments do not meet or equal an impairment in the listings. The ALJ went on to conclude at step four that Johnson's limitations do not preclude him from returning to past relevant work. We conclude that these findings are supported by substantial evidence.

Appellant argues that the ALJ committed an error at step three by not finding that Johnson did not meet or equal a listed impairment. The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing. See

Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990). To meet a listing, an impairment must meet all of the listing's specified criteria. Id. at 530 ("An impairment that manifests only some of these criteria, no matter how severely, does not qualify."). "Medical equivalence must be based on medical findings." 20 C.F.R. § 416.926(b) (2003); Sullivan, 493 U.S. at 531 ("a claimant . . . must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment").

The specified criteria for 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 B and C regarding mental retardation are as follows. A person must have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., . . . before age 22." Level of intellectual functioning requirements are satisfied by evidence of "[a] valid verbal, performance, or full scale IQ of 59 or less" or "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 B and C.

Johnson claims that psychological testing performed in 1998 and 2001 by Dr. Richard Maddock demonstrates that he meets the listing for mental retardation since it showed mild mental retardation and a low IQ. The SSA counters that the 1998 and 2001 tests Johnson points to fail to provide evidence that his impairments meet the criteria of § 12.05 B or C, since Dr. Maddock stated that his tests were unreliable on account of malingering by Johnson. The ALJ concluded that Johnson was not under a disability within the meaning of the Social Security Act at any time through the date of its decision.

The ALJ's conclusion is supported by substantial evidence in the record. Principally, the ALJ discounted the results of both psychological evaluations on

which Johnson relied due to evidence that Johnson malingered during the examinations and due to the fact that the ALJ failed to find evidence of a lack of adaptive functioning by Johnson.

While an IQ test is helpful in determining whether an applicant has a mental impairment, it is not the only evidence that may be examined. Other information which indicates an individual's ability to function can be used to discredit the results of the IQ test. Holland v. Apfel, 153 F.3d 620, 622 (8th Cir. 1998). We have held that an ALJ may reject IQ scores if they are inconsistent with the rest of the record. Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir. 1998). Test results should be examined to assess consistency with daily activities. Id. In this case, the ALJ appropriately took into consideration Dr. Maddock's conclusions that Johnson malingered and that Johnson did not display the significant limitations in adaptive functioning that 12.05 requires.

In his first report from 1998, Dr. Maddock stated that Johnson's Wahler Physical Symptoms Inventory score showed strong indications of malingering and that Johnson answered items on the Minnesota Multiphasic Personality Inventory-2 randomly. Dr. Maddock's September 2001 report also noted that Johnson's behavior showed indications that he answered randomly to many items without regard to content. Dr. Maddock concluded that little or no weight should be given to the information. The Computerized Assessment of Response Bias verified malingering and response bias. Dr. Maddox stated that Johnson "wanted to receive or continue benefits[,] and [that Johnson] felt the best way to do that would be to embellish or exaggerate a disability," and that Johnson was not open and honest during his interview. Finally, the Weschler Memory Scale-Revised presented scores inconsistent with other test scores and with Johnson's complaints of a poor memory (they showed a strong memory).

The record also indicates that Johnson did not display the significant limitations in adaptive functioning that 12.05 requires. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 B and C. In fact, the district court stated in its review that "[Johnson] testified that he would still be working at the time of the hearing had he not been fired[,]" and "that he was looking for work at the time of the hearing."

Thus, ample evidence exists in the record to support the conclusion of the ALJ. Johnson failed to meet his burden of proof in demonstrating that he meets the requirements of 12.05 because: 1) he failed to provide a valid IQ test due to continual malingering; and 2) his ability to function despite a possible limited IQ. Accordingly, the Social Security Administration's determination was reasonable.

The judgment of the district court is affirmed.

_____