United States Court of Appeals
FOR THE EIGHTH CIRCUIT

————

No. 07-3901

————

Tasha A. McGee,                          *
                                         *
         Appellant,                      *
                                         *
    v.                                   *    Appeal from the United States
                                         *    District Court for the Southern
Michael J. Astrue,                       *    District of Iowa
Commissioner of Social Security,         *
                                         *         [UNPUBLISHED]
         Appellant.                      *

————

Submitted: June 13, 2008
Filed: September 5, 2008

————

Before SMITH and GRUENDER, Circuit Judges, and ROSENBAUM, District
Judge.[1]

————

PER CURIAM.

———————————

    [1]The Honorable James M. Rosenbaum, United States District Judge for the
District of Minnesota, sitting by designation.

Tasha A. McGee seeks disability benefits. The district court agreed with the Commissioner of Social Security's decision finding her ineligible. We affirm the decision of the district court.[2]

I. Background

Tasha McGee was born on September 8, 1974. She attended regular classes in school through tenth grade, before dropping out to have her first child. She later earned her general equivalency diploma ("GED"). She and her family live in Davenport, Iowa.

Ms. McGee has experienced intermittent bouts of depression, mood swings, anxiety, and panic attacks throughout her life. These included two suicide attempts while in her early twenties. She received mental health treatment in 1995 at age 21. Thereafter, she required emergency room services related to panic attacks. She received anti-anxiety medications, including Paxil and Xanax.

Ms. McGee worked sporadically at a series of unskilled jobs between 1994 and 2002. None lasted longer than a few months. The most she earned in a single year was $2,761.35. She last worked on April 2, 2002. On April 29, 2002, she filed for supplemental security income ("SSI") disability benefits, claiming depression and anxiety kept her from working.

Ms. McGee's first SSI application claimed she could not work due to "sudden rapid heartbeats, blackouts, hyperventilation, depression, anxiety attacks, mood swings, headaches, chest pain." The accompanying personal questionnaire she submitted in support gave detailed information concerning her mental health and its effect on her

_____

[2]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

family, along with a work history and history of physical discomfort. The initial examiner interviewed Ms. McGee by telephone in May, 2002, and found she had no difficulty in reading, understanding, or coherency.

Following this interview, both Ms. McGee and her husband completed additional questionnaires concerning Ms. McGee's daily activities. They revealed her ability to drive, clean house, help care for their children, including giving baths and getting them dressed, and cook two meals a day. Ms. McGee stated she tried to read an hour every day, including newspapers, magazines, and the Bible. She responded to the question, "Do you understand and remember what you read?" by saying, "Sometimes I remember and then somedays [sic] I have problems focusing on it." Ms. McGee could pay bills and manage money. Both Ms. McGee and her husband claimed her irritability, panic attacks, and mood swings interfered with her ability to socialize, run errands, do household work, and hold a job.

In July, 2002, as part of her application for benefits, Ms. McGee was evaluated by Michael Stempniak, Ph.D., a clinical psychologist. Mr. Stempniak noted her depression and anxiety. He administered tests which showed "her immediate memory was in the low average range," but "with more effort, her concentration tends to improve." She could identify recent presidents as "Bush, Clinton, Reagan," but identified five large cities as "California, Florida, New Mexico, Chicago, Texas." She recalled two famous people as "Clint Eastwood and Bill Cosby," and correctly answered questions involving addition and subtraction, although she did not do well in multiplication. Mr. Stempniak diagnosed panic disorder with agoraphobia, and major depressive disorder. His diagnosis was similar to that rendered by Rhonda Lovell, Ph.D., who did a psychiatric review of Ms. McGee in August, 2002.

Ms. McGee's application was denied in August, 2002, and reconsidered in October of that year. She said her symptoms had not improved, and she submitted a supplemental report on her daily activities. To the question "What do you do for

relaxation or recreation?" she responded, "read a very good magazine or most of the time sleep." When asked "How often?" she responded, "everyday [sic]." A second psychiatric review was included in the reconsideration. This was performed by Philip R. Laughlin, Ph.D., on December 26, 2002. His review was consistent with Ms. McGee's prior diagnoses of major depressive and panic disorders.

Ms. McGee's application was denied again in January, 2003. In August, 2003, she requested a hearing before an Administrative Law Judge ("ALJ"). Prior to the hearing, Ms. McGee again supplemented the record with updated medical information. The new information showed that, in 2003 and 2004, Ms. McGee was treated at the Vera French Community Mental Health Center in Davenport, Iowa. She was prescribed Depakote, Klonopin, Zoloft, Lexapro, Seroquel, Inderal and Xanax. She also had therapy every three weeks. Her progress notes reflect continuing mental health issues.

The ALJ held a hearing in January, 2005, at which no testimony was taken. Ms. McGee then supplemented the record with medical documentation, including a residual functional assessment by Dr. Ciaccio, a psychiatrist who treated her since 2003. Dr. Ciaccio noted depression and anxiety, and its effect on her ability to work.

A second hearing was held in August, 2005, when the ALJ took testimony. Ms. McGee described her experience with anxiety, depression, and panic attacks. She discussed raising her five children and the family's activities. Charlene Bell, an independent medical expert, concluded Ms. McGee met several presumptively disabling criteria for depression and panic disorder[3] "in the moderate sense." Marian Jacobs, a vocational expert, opined that Ms. McGee's impairment "would preclude her past relevant work as well as competitive employment."

---

[3]See 20 C.F.R. Part 404, subpart P, appendix1, Listings 12.04 and 12.06.

After this hearing, the ALJ directed Ms. McGee to undergo testing by psychologist Stanley Smith. In September, 2005, Mr. Smith administered the WAIS-III test which showed a verbal IQ of 69, a performance IQ of 65, and a full scale IQ of 65. He said her "effort and motivation appeared to be good; therefore, the results of intellectual testing are thought to be a reliable estimate of her current intellectual functioning." Mr. Smith reported Ms. McGee as "able to read the vocabulary words that were presented to her, but mostly only the simpler words. Her overall verbal abstraction abilities were also within the impaired range, with very concrete common sense/social judgment."

Mr. Smith also administered the MMPI-2 test, which took Ms. McGee much longer than normal to complete. Ms. McGee produced an invalid clinical profile. After noting factors that might produce such a result, for example, "falsely claiming psychological problems, confusion, and/or a low reading," Mr. Smith concluded the MMPI-2 profile was most likely invalid due to Ms. McGee's low reading ability. He diagnosed Ms. McGee with generalized anxiety disorder, major depressive disorder, panic disorder without agoraphobia, and mild mental retardation. This is the first record mention of any cognitive impairment.

Based on Mr. Smith's report, Ms. McGee sought a supplemental hearing, which was held in November, 2005. For the first time, she claimed she met Listing 12.05C dealing with mental retardation. The ALJ took testimony from a second medical expert, Dr. Sanford Pomerantz, another vocational expert, Julie Svec, and more testimony from Ms. McGee.

Dr. Pomerantz, when asked to account for Ms. McGee's IQ scores in relation to the fact that she had not been in special education classes, stated he had "no explanation why she scored retarded on the test unless perhaps she wasn't trying her best." (A.R. 361.) He concluded Ms. McGee's "longitudinal history isn't consistent with a diagnosis of mental retardation."

On behalf of the Commissioner, the ALJ rejected Ms. McGee's claim, finding she was not disabled. Ms. McGee timely sought judicial review of the decision. The district court affirmed.

II.    Analysis

While our review of the district court's decision is <u>de</u> <u>novo</u>, our review of the Commissioner's decision is deferential. <u>See</u> <u>Johnson v. Barnhart</u>, 390 F.3d 1067, 1069 (8th Cir. 2004). We must affirm if the ALJ's decision is "supported by substantial evidence in the record as a whole." <u>Id.</u> at 1070. "Substantial evidence is evidence that a reasonable mind would find adequate to support a decision, considering both evidence that detracts from and evidence that supports the Commissioner's decision." <u>Id.</u>    If the evidence allows two inconsistent conclusions, and one of them is the Commissioner's, we must affirm the Commissioner's findings. <u>See</u> <u>id.</u>

The Commissioner uses a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. A claimant must prove: first, that she has not engaged in substantial gainful activity; second, that she has a medically determinable severe impairment, as that term is defined in the regulations; third, she may prove her impairment meets or equals a presumptively disabling impairment listed in the regulations; if so, the claimant is presumed to be disabled, and no further analysis is needed. If not, the analysis proceeds to a fourth step. Here, the claimant must prove her impairment prevents her from performing her past relevant work; and fifth, if the claimant carries her burden to this point, the Commissioner has the opportunity (and burden) to prove there are other jobs the claimant can perform. <u>Gonzales v. Barnhart</u>, 465 F.3d 890, 894 (8th Cir. 2006); <u>Johnson</u>, 390 F.3d at 1070.

The record shows the ALJ first determined Ms. McGee had not engaged in substantial gainful activity. To establish step 2's severe impairment, Ms. McGee presented evidence of anxiety disorder and affective disorder. She also offered Mr. Smith's report to show mild mental retardation. The ALJ agreed the anxiety disorder and affective disorder, taken together, amounted to a medically determinable severe impairment as defined in the regulations. The ALJ was, however, unpersuaded by the IQ test, concluding Ms. McGee had "no medically determinable impairment as far as any mental retardation is concerned." Id. The ALJ proceeded no further with the mental retardation analysis.

Next, the ALJ concluded Ms. McGee's anxiety and depression did not meet the presumptively disabling criteria found at Listings 12.04 and 12.06 of 20 C.F.R. Part 404, subpart P, appendix 1. At step 4, the ALJ found that, to the extent Ms. McGee could be considered to have past relevant work, she retained the capacity to perform it. Alternatively, the ALJ concluded at step 5, Ms. McGee had the capacity to perform similar jobs.

On appeal, Ms. McGee challenges only the ALJ's decision to reject her IQ test. She claims her IQ test not only establishes medically determinable mental retardation, as required at step 2, but also meets one of the criteria for presumptive disability required at step 3. See Listing 12.05C of 20 C.F.R. Part 404, subpart P, appendix 1. Ms. McGee argues the ALJ should have found her presumptively disabled under Listing 12.05C, which addresses mild mental retardation.[4]

---

[4]To meet listing 12.05C, Ms. McGee must show "(1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment posing an additional and significant work-related limitation of function." Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006).

The issue, then, is whether there is substantial record evidence as a whole supporting the ALJ's decision to reject the IQ scores for invalidity. We find there is.

The WAIS-III is an acceptable means to test for mental retardation. See Bailey v. Apfel, 230 F.3d 1063, 1065 (8th Cir. 2000) (referring to predecessor test, the WAIS-R). There is no suggestion the test was improperly administered, and no other test has been offered in contradiction. Mr. Smith believed the IQ scores were valid and accurate.

The Commissioner is not, however, required to accept a claimant's IQ score. See Miles v. Barnhart, 374 F.3d 694, 699 (8th Cir. 2004); Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir. 1998). Rather, the ALJ should examine the record to determine whether the proffered IQ score is reliable - that is, consistent with the claimant's daily activities and behavior. Miles, 374 F.3d at 699. An ALJ may reject IQ scores if they are inconsistent with the record. Johnson, 390 F.3d at 1071; Clark, 141 F.3d at 1255. Here, the ALJ rejected Ms. McGee's IQ scores as invalid.

We must consider the record as a whole, including evidence both for and against the ALJ's conclusion. The strongest evidence against the ALJ's view is the IQ test itself. The ALJ requested the examination and selected the psychologist who administered it. The resulting scores clearly fall in the range contemplated by Listing 12.05C. The psychologist who administered the test supported its validity.

On the other hand, this IQ test stands alone in the record. It is the product of a single examination by a non-treating psychologist in connection with a disability benefits claim. Compare Clark, 141 F.3d at 1256. ("A one-time evaluation by a non-treating psychologist is not entitled to controlling weight.") It was administered when Ms. McGee was 31 years old. While IQ is presumed stable over time, see Maresh, 438 F.3d at 900, we consider the fact that Ms. McGee was never previously suspected of mental retardation to be "significant in gauging the reliability" of these particular IQ

scores. Clark, 141 F.3d at 1256. ("Nothing in [claimant's] extensive medical records indicates that she was ever suspected of being mildly mentally retarded" prior to examination.)

The IQ scores are inconsistent with Ms. McGee's medical history. Ms. McGee has been extensively examined by medical and mental health professionals over many years. They have examined her in connection with recurrent depression, anxiety, and panic attacks. Mr. Smith is the first, and the only, person suggesting any cognitive difficulty at all. Significantly, neither Ms. McGee's treating psychiatrist nor her therapist, each of whom saw her periodically for more than a year prior to the IQ test, perceived any mental retardation. Compare Clark, 141 F.3d at 1256.

The IQ scores are also inconsistent with Ms. McGee's prior history and present activities. Ms. McGee always took regular classes and completed the tenth grade in school. There is no evidence showing she struggled academically. While she dropped out of school after tenth grade, her departure was to have a baby, as opposed to any suggestion of academic inability. Thereafter, she earned her GED. While she indicated she had been fired from jobs due to her inability to accept criticism, we have no evidence showing she ever lost a job for lack of cognitive ability. Compare Miles, 374 F.3d at 698 (claimant had not been terminated from a job for lack of mental abilities). We also contrast Mr. Smith's conclusion of limited reading ability with the reports by both Ms. McGee and her husband that she regularly reads newspapers, magazines, and the Bible. She stated she tries to read for "at least an hour a day." At the time of the hearing, Ms. McGee and her disabled husband were maintaining a home and raising five children ranging in age from 14 to 2, which the ALJ found was inconsistent with mental retardation.

Ms. McGee argues that her GED is not necessarily inconsistent with a finding of mild mental retardation. See Appellant's Br. at 28-29, citing Markle v. Barnhart, 324 F.3d 182, 189 (3d Cir. 2003) and Lewis v. Astrue, No. C06-6608 SI, 2008 WL

191415 (N.D. Cal., Jan. 22, 2008) (unpublished).  However, a claimant's educational achievement is one factor properly considered in determining whether IQ scores are valid.  See Miles, 374 F.3d at 695, 698 (claimant received B grades in regular classes through the eleventh grade); Clark, 141 F.3d at 1254, 1255 (claimant had ninth grade education).  In essence, Ms. McGee is asking us to reweigh the evidence.  This we may not do.  We cannot reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome.  Clark, 141 F.3d at 1255.

Finally, the ALJ found Ms. McGee's demeanor at the hearings was inconsistent with a finding of mental retardation.  An ALJ's personal observation of a claimant at the hearings is an appropriate factor to consider in assessing the validity of IQ score.  Miles, 374 F.3d at 699; Clark, 141 F.3d at 1255.

Given the evidence, the ALJ found Ms. McGee's low IQ scores were best explained by poor motivation, despite Mr. Smith's finding to the contrary.  There is substantial evidence in this record as a whole which supports the ALJ's finding, and we will not disturb it.

Absent a valid IQ score, Ms. McGee cannot show a medically determinable cognitive impairment requiring further analysis.  Nor can she show an impairment which meets the Listing 12.05C criteria.  See Johnson, 390 F.3d at 1070, citing Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990) (claimant must present medical findings equal in severity to all the criteria of a listed impairment).  Therefore, we find there is substantial evidence in the record as a whole which supports the Commissioner's conclusion that Ms. McGee is not presumptively disabled.

For the foregoing reasons, the decision of the district court is affirmed.

───────────────────────────